**No. 56194.**—Pacific Coast Feather Company (Geo. S. Bush & Co., Inc.) *v.* United States, petition 6787–R (Seattle).

EKWALL, Judge: This is a petition for remission of additional duties filed under section 489 of the Tariff Act of 1930. Said additional duties were assessed because the value of an importation of duck and goose feathers from Shanghai, China, entered at the port of Seattle, Wash., was declared on entry at less than the final appraised value. Entry was made on April 7, 1949, at values of 31 cents per pound and 48 cents per pound. Appraisement was made at the values of 42 cents per pound and 61 cents per pound, respectively, both less certain deductions.

It was developed at the trial that the entered values were obtained from a commercial invoice numbered 1593. Prior to entry, the customs broker for the petitioner herein submitted to the customs examiner this commercial invoice together with a "submission sheet," in which information is requested from the appraiser prior to entry as to the value of the merchandise to be entered. On this sheet (exhibit 11), it appears that the Government officials reported that they had no current information.

From the testimony of Mrs. Robert E. Gerlach, it appeared that she had been employed as secretary and bookkeeper of the petitioner for 7 years. Her testimony was substantially to the following effect. The commercial invoice 1593 was brought to the office on March 16, 1949, when a letter of credit covering this merchandise was paid at the bank. She received it from Mr. Frederick F. Hanauer, at that time an active member of the importing firm. In addition to the amount of the letter of credit, there was paid for the merchandise an additional amount, represented by a check to Liebermann, Waelchli & Co. of New York, the foreign seller's New York office (exhibit 2), for $577.85, drawn April 19, 1949. The amount of the letter of credit was $2,801.47. This was in accordance with a request from the seller's Shanghai office. This commercial invoice, 1593, was sent by the witness to the customs broker, Geo. S. Bush & Co., Inc. At that time, no other invoice had been received by the petitioner. No instructions were given to the customs broker when the invoice was forwarded to it, the witness explaining that the petitioning firm always forwarded to the customs broker whatever invoice petitioner received from the bank when it paid the letter of credit. She at first testified that she thought she had merely placed this commercial invoice in an envelope addressed to the broker without any covering letter. Later, after consulting the office files, she stated that Mr. Frederick F. Hanauer had dictated a letter to her addressed to the customs broker and enclosed the invoice in question. Said letter was received in evidence and marked exhibit 6.

Subsequently, consular invoice 1402 was received, a copy of which was introduced in evidence as part of collective exhibit 3. The witness did not forward the consular invoice to the customs broker. Her explanation of her failure to to do so was given as follows:

It got filed away in error. It came in later. I thought the deal had been handled and everything, so I just thought it was part of our files, so I filed it away.

In response to a question as to what was meant by the witness in saying that she thought the deal had been handled, she replied:

I knew that the letter of credit had been paid at the bank, and I knew that the merchandise had been taken in stock and taken into our inventory, so when the additional consular invoice and the copies of the commercial invoices came to my desk I didn't check the figures, which I should have, and I just filed it away, thinking the deal had been completely closed, and all it was was a matter of filing.

This witness stated that she does not read the firm's incoming correspondence thoroughly as it "is usually answered by Mr. Hanauer." She worked under his instructions, and is a stenographer and bookkeeper.

Subsequently, the customs broker requested copies of correspondence and the consular invoice. Its letter was given to this witness by Mr. Hanauer, and he instructed her to look up the documents requested and mail copies to the broker. However, she explained that Mr. Hanauer was on his way to New York at the time and he had given her a great deal of work to do. She did not realize the importance of the documents requested, so had laid the broker's letter aside and had not made the copies requested until the office had been visited by a customs inspector, at which time she realized that the consular invoice was in the office. She further explained that the method of handling this shipment was contrary to the usual practice in that in all of the shipments she had previously handled, the consular invoice always came to the bank, but in this case it was mailed direct to the importer and arrived at a later date.

In referring to Mr. Hanauer in connection with these matters, the witness stated that she referred to Mr. Frederick F. Hanauer.

Mr. Sidney J. Hanauer was called as a witness by the petitioner and stated that he was a partner in the company; that he and one Harry S. Schmidt were active partners at the time of the hearing and Mr. Frederick F. Hanauer was a silent partner, but that at the time of this importation, March 1949, the partnership consisted of himself and his cousin, Mr. Frederick F. Hanauer. He testified that he and his cousin talked over the matter of purchasing this merchandise and that he knew the terms upon which it was bought. So far as he recalled, the firm purchased the merchandise at the price indicated by the cable in evidence and later on the shipper requested that the petitioner pay a certain portion of the total cost to its New York office. His recollection of the reason for this request was that it was due to "Chinese inflation, and the restrictions that those exporters there could not do very much with the money they were paid out in China," which was the amount of the check (exhibit 2) in evidence. On cross-examination, this witness testified that they arranged to pay 42 cents a pound for the gray duck feathers and 61 cents a pound for the white goose feathers and that this arrangement was made in February 1949. The witness had nothing to do with filing the entry; at that time Mr. Frederick F. Hanauer attended to the work outside of the office and he, the witness, attended to the inside office work. He stated that at the time of the hearing, Mr. Frederick F. Hanauer was in Europe. He had not discussed this entry with the customs broker, and he was sure that they did not give the letters covering consular invoice No. 1402 to the customs broker. He identified his signature on the owner's declaration on the reverse side of entry 2420, although he did not remember signing it. He did not remember having had anything to do with locating the documents requested later by the broker when request was made for them; at that time he had nothing to do with that matter which was handled by his partner; that the first time he knew there had been a mistake made was either when the customs investigator or the broker called the attention of the firm to it.

The petitioner also introduced the testimony of the United States customs examiner who examined the merchandise here involved. He stated that the broker submitted the invoice to him with the regular form of submission sheet prior to entry and he told the broker that the examiner had no current information. Subsequently, he requested that the importer furnish cables and correspondence covering the transaction here involved. Upon two other occasions, he requested the broker orally for further information, which requests were made within the 2 months following April 1949. At the time the broker presented the submission sheet (exhibit 11), said broker gave him nothing but the commercial invoice which

showed the prices paid to be 31 cents a pound for the gray duck feathers and 48 cents a pound for the white goose feathers. This was prior to the filing of the submission sheet or the entry. The witness testified that after two requests made to the broker for further information the customs officials caused an investigation to be made. This was on May 23, 1949. Up to that time, the date of the investigation, neither the broker nor the importer had furnished any information as to the correct purchase price of these goods. Subsequent to May 23, 1949, the witness received information as to the correct purchase price as the result of the investigation.

The deputy collector of customs in charge of the liquidating division at the port of Seattle was produced as a witness on behalf of the petitioner. He testified that the consular invoice (exhibit 13) was produced on June 14, 1949, in cancellation of the bond given for its production.

The president of the customs brokerage firm testified on behalf of the Government and stated that the first information he had as to the purchase price and method of payment of this merchandise as shown in collective exhibits 3, 4, and 9 herein was when the Government investigator gave him the information that he had found in the importer's files a consular invoice giving a value different from that shown on the invoice filed with the entry. He stated that it was then too late to file an amended entry.

It is apparent from the record that the entry at a value less than that found on final appraisement was due to an error of an employee of the petitioner in filing the consular invoice instead of forwarding it to the customs broker. We find her account of what transpired logical and probable. She followed the usual course and did not realize that there was present an unusual factor which called for prompt action. Moreover, she was not in the habit of taking responsibility but acted under instructions of her superiors in performing her tasks. We find no evidence of fraud in the case as presented but merely carelessness which, in itself, is not fatal to petitioner's claim. This, without indifference or other aggravating circumstances, has been held to be no bar to granting remission. *Fuchs Shoe Co. v. United States*, 22 Cust. Ct. 220, Abstract 52798, following *United States v. Fish*, 268 U. S. 607.

For the foregoing reasons the petition is granted.